JOHN N. DENNISON & *als. versus* WASHINGTON BENNER.

The recital in the caption of a deposition, that the deponent " being first
duly sworn, gave his aforesaid deposition," imports that he was sworn ac-
cording to law, before giving it.

The acts or declarations of a vendor, made *after* other persons have acquired
separate rights in the same subject matter, cannot be received to disparage
their title.

ON EXCEPTIONS from *Nisi Prius*, RICE, J., presiding.

This was an action of the case under the statute, charging
that the defendant took a conveyance of a quantity of goods
from John Benner, on the 14th of April, 1848, of the value
of $1000, for the purpose of defrauding the plaintiffs, who
were the creditors of the said John.

The general issue was pleaded and joined.

There was evidence tending to show that the defendant
purchased the goods of the said John at the time alleged,
fairly and *bona fide*, and with no intention to defraud, and
paid a full price therefor.

Dennison *v.* Benner.

To sustain the issue on his part, the plaintiff offered the deposition of Wm. R. Keith, which was objected to by the defendant, on the ground that it did not appear from the caption, that the deponent had been sworn to testify relative to the cause or matter for which the deposition was taken, and that it did not appear that he had been sworn according to the requirements of law; but the Judge overruled the objection and admitted the deposition, and it was read to the jury.

The plaintiff also introduced Moses Sidelinger, who testified that he had a conversation with said John Benner in his store, in the fall of 1848, after the purchase of the goods by the defendant in the spring of that year; that said John had a book account against him, and after some searching, he found his books up stairs, concealed between the plastering and the chamber floor, in the store where they settled. He told him he wanted to settle up and get a note, so that the Boston chaps could not get the books, for if they did, they would trouble him, (the witness,) by suing him. This was the reason he gave for having his books where they were.

They settled, and the witness gave his note for about $50, to said John, after they had found the books. No other persons were present with the said John and the witness during this conversation. This testimony was objected to, but the Judge overruled the objection and admitted the testimony.

The jury rendered a verdict for the plaintiffs.

To the foregoing rulings the defendant excepted.

*Bronson* and *Paine*, for plaintiff.

The testimony of Sidelinger was properly admitted.

Plaintiff was required to establish two propositions: —

1st. That John Benner, by the transfer, intended to defraud his creditors.

2d. That the defendant knew of this intention and took the transfer to effect it.

To establish the first proposition, it was competent for

plaintiff to show the conduct of John subsequent to the transfer. *Richmond* v. *Vassalboro'*, 5 Maine, 396.

When one is doing an act, his declarations of his motives are admissible. *Wayne* v. *Greene*, 21 Maine, 357.

The declarations were explanatory of the act, and so connected with it as to fall within the principle of *res gestæ*. 1 Starkie, 47.

As the instructions are not complained of, it may be presumed they were correct.

*Bradbury & Morrill,* for defendant.

1. The caption to Keith's deposition is defective, and the deposition was not admissible.

It does not show by express terms, nor by necessary implication, that the deponent was sworn according to the requirements of the statute. *Brighton* v. *Walker,* 35 Maine, 132.

2. The declarations of John Benner were improperly admitted.

He was a competent witness, and they were hearsay. They were made too, a long time after the sale of the goods to the defendant, and the vendor could not impair the title to property he had already sold.

But they were no part of the *res gestæ.* They accompanied no act relating to the question at issue. The fact that John Benner concealed his books, or expressed a wish to settle them up and get a note so that "the Boston chaps could not get them," long after the sale, had nothing to do with the issue whether the defendant fraudulently purchased a lot of goods.

Yet these declarations were calculated to create great prejudice, and on them the plaintiff obtained his verdict, or they contributed to it.

MAY, J. — The first ground of exception relates to the admission of the deposition of one Wm. R. Keith. It is contended that the caption is defective, and does not show that the deponent was sworn according to the requirements

of the statute. The caption recites that the deponent "being first duly sworn, gave his aforesaid deposition;" and this language we think fairly imports that he was sworn according to law *before* giving it. This case is unlike that of *Brighton* v. *Walker*, 35 Maine, 132, cited in the argument, where the language of the caption was, that the deponent "was first sworn according to law to the deposition by him subscribed," which clearly indicates that the deposition was written and subscribed by the deponent *before* the oath was administered. In this case the language used cannot be misunderstood, and its plain meaning is, that the proper oath was administered before the giving of the deposition, and therefore it was legally admissible.

The other exception taken at the trial, and which is now insisted upon, is one of more doubt. This is an action under the statute against the defendant for taking a conveyance of a quantity of goods from one John Benner, on the 14th of April, 1848, for the purpose of defrauding the plaintiffs, who were then the creditors of said Benner, and the exception relates to the testimony of one Moses Sidelinger, who testified that in the fall after the purchase of the goods by the defendant, "he had a conversation with said John Benner at his store; that said Benner had a book account against him, and that he, after some searching, found his books up stairs, concealed between the plastering and the chamber floor, in the store where they settled; and that said Benner told him he wanted to settle and get a note, so that the Boston chaps could not get the books, for if they did, they would trouble him (the witness,) by suing him. This was the reason he gave for having the books where they were, and they settled, and he gave his note for fifty dollars." This testimony was objected to, and the question now before us is, whether it was properly admitted. It relates to both the acts and declarations of the vendor, which were done and made by him some months *after* the sale of the goods to the defendant. To maintain his action, it was necessary for the plaintiff to show that the sale of the goods to the defendant was fraudu-

lent, and as a part of the evidence to establish this fact, he must necessarily show that John Benner had a fraudulent intention in making the sale. But this must be established by competent testimony. Is it then competent for a vendor of goods by his *subsequent* conduct or declarations, to invalidate the title of his vendee, and is evidence of such conduct or declarations admissible for that purpose?

That mere naked declarations of the vendor *subsequently* made are inadmissible for such purpose, seems to be well established, while it is equally clear that both his conduct and declarations made before and about the time of the alleged fraudulent sale are admissible. All the authorities concur in this. As directly in point, we cite *Green* v. *Harriman*, 14 Maine, 32, and *Fisher* v. *True*, 38 Maine, 534. And the reason is, because in cases of alleged fraudulent conveyances or sales, what the vendor did or said respecting them, or respecting other similar transactions to which he was a party about the same time, may tend to throw light upon the question of his intention in making the sale in controversy. His conduct and declarations so made, are regarded as in the nature of accompanying admissions from which his intention in that particular transaction may be inferred. "But admissions made *after* other persons have acquired separate rights in the same subject matter, cannot be received to disparage their title, however it may affect that of the declarant himself." 1 Greenl. Ev. § 180. And SHEPLEY, C. J., in the case of *Fisher* v. *True*, before cited, remarks, that the vendor's declarations made subsequent to the sale, and having a tendency to impeach it, must be excluded.

If then an alleged fraudulent vendor of goods cannot *after the sale* be permitted, when not under oath, to speak through his lips so as to affect the title of his vendee, it is difficult to perceive why he should be permitted to speak through his subsequent acts; and that he cannot do so, after the sale and after he has parted with his possession of the property, seems to be well established by the authorities. In the case of *Bridge* v. *Eggleston*, 14 Mass. 245, the Court say, that "the

declarations, conversations *or even the actions* of a grantor ought not to be received in evidence in prejudice of the title he has created, because he is interested to have such title defeated by his creditors and because the other party has a right to examine him on oath, provided he is a competent witness." This Court have decided in a case similar to this, that the vendor's interest is balanced, and that therefore he is a competent witness. *Ward* v. *Chase,* 35 Maine, 515. But the Court, in the case of *Bridge* v. *Eggleston,* further say, that " the conduct and declarations of the grantor respecting the estate conveyed and tending to prove a fraudulent intention on his part *before the conveyance,* are proper evidence for the jury upon an inquiry into the validity of such conveyance by a creditor or subsequent purchaser, who alleges it to be fraudulent;" and MELLEN, C. J., in the case of *Flagg* v. *Wellington,* 6 Greenl. 386, cites this last quotation from the case of *Bridge* v. *Eggleston,* with approbation, and then remarks, "we know of no case which has extended the principle further than this decision;" and no case has been cited, and it is believed that none can be found, where the principle has been extended so as to admit in evidence the acts or declarations of the vendor made after the sale, and certainly not unless they were at or about the time of the sale. In the case of *Howe* v. *Reed,* 3 Fairf. 515, this Court held, that the plaintiff should be permitted to give in evidence a fraudulent sale of goods made by the same grantor about the same time, but before the conveyance in question. So also in the case of *Foster* v. *Hall,* 12 Pick. 89, the Court held, that cotemporaneous and antecedent acts and declarations of the grantor were admissible. The cases cited all treat the conduct and declarations of the grantor as standing upon the same ground.

It is true the cases cited are all in reference to conveyances of real estate; but no reason is perceived why the same rule should not be applied to sales of personal property; and the authorities show, that so far as declarations are concerned, the rule is the same in relation to both real and personal estate; and why should not the conduct or acts of a grantor

or vendor have the same effect in both cases? Is there any thing in the nature of the different estates, which requires a different rule to be applied in the one case from that which is applied in the other? Is there any thing in the nature of the evidence itself, tending to show that the subsequent acts of a vendor of goods ought to be received in evidence to impeach his vendee's title, any more than the subsequent conduct of a grantor of lands, to impeach the title of his grantee? We know of nothing either in the nature of the estates, or of the evidence itself, that requires a different rule. If, then, in the case of an alleged fraudulent conveyance of real estate, the subsequent conduct of the grantor should be excluded, as the cases cited seem to show, so should the same conduct or acts of the vendor in the case of a fraudulent sale. And no case has been cited where, in a question like this, the subsequent conduct of the supposed fraudulent vendor of personal property has ever been admitted. In the case of *Low* v. *Payson*, 32 Maine, 521, the marginal note by the reporter is, that " upon the question whether a sale was fraudulent, it is not allowed that the party claiming under the sale should prove that the grantor *after the sale* performed an honest act relative to the same subject matter;" but the case shows that the matter in controversy was the sale of personal property, and that the act offered in evidence was an offer to turn out the note taken for it to the plaintiff, after the suit was brought. If the honest acts of a vendor *after the sale* are excluded when offered in support of the vendee's title, it is not readily seen upon what principle his dishonest acts, subsequent to the sale, can be admitted.

The case of *Richmond* v. *Vassalborough*, 5 Maine, 396, cited by the counsel for the plaintiff, is not like this. That was a question of domicil upon a particular day by a pauper; and his subsequent conduct in remaining at or removing from the place where he was residing on that day, taken in connection with all the circumstances attending his going there, might well be received as tending to show with what intent he was there upon that particular day.

Dennison *v.* Benner.

When the conduct or declarations of a vendor or grantor are admissible, it is upon the ground that they contain, either impliedly or expressly, an admission on his part as to the motive by which he was actuated in making the conveyance or sale; and, the rule of law being, as before stated, that "an admission made *after* other persons have acquired separate rights in the same subject matter, cannot be received to disparage their title; and this doctrine being, as is said by Mr. Greenleaf in his work before cited, vol. 1, § 180, "most just and equitable," and alike applicable "to vendor and vendee," "grantor and grantee," we have come to the conclusion that the testimony of Sidelinger, which was objected to, and admitted at the trial, was improperly admitted.

The acts testified to by this witness, were so long after the sale in question, that even if the rule that the acts of an alleged fraudulent vendor, occurring *at or about* the time of the sale, should be so extended as to embrace his acts immediately after it, they would not seem to fall within the rule. From aught that appears in the testimony, they might have been six or seven months after the sale in controversy, and they were separate and distinct transactions.

If the acts were not admissible, it is unnecessary to consider whether the declarations were a part of the *res gestæ.* They accompanied no act material to the question in issue and ought therefore to have been excluded. *Corinth* v. *Lincoln,* 34 Maine, 310.            *Exceptions sustained, and*

*New trial granted.*

TENNEY, C. J., concurred that the testimony was improperly admitted. — RICE, and CUTTING, J. J., concurred in the result. — APPLETON, J., concurred.