[No. 1869, July 17, 1916.]
[Rehearing Denied October 18, 1916.]
## WARD v. BUCHANAN et al.

### SYLLABUS BY THE COURT.

1. Express trusts are those which are created by the direct and positive acts of the parties, by some writing or deed, or will, or by words either expressly or impliedly evincing a desire to create a trust.

P. 270

2. Upon an inquiry into the validity of a conveyance alleged to be fraudulent, a fraudulent intent of the grantor must be shown and a knowledge thereof or a participation therein by the grantee must likewise be proven, and the knowledge on the part of the grantee may be proven by circumstances tending to show a knowledge of the designs of the grantor .

P. 270

Appeal from District Court, Quay County; T. D. Leib, Judge.

Action by J. F. Ward against William T. Buchanan and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded, with instructions.

REED HOLLOMAN of Santa Fé, for appellants.

H. H. McELROY and C. C. DAVIDSON, both of Tucumcari, for appellee.

### STATEMENT OF FACTS.

This action was brought in the district court of Quay county by the plaintiff below, who is appellee here, to quiet title to certain real estate described in his complaint, a number of defendants being joined, with only one, the appellant Roy Buchanan, appearing in answer. The facts, briefly stated, are as follows:

The land in question was owned by Rebecca T. Buchanan, who, on January 27, 1911, transferred the same to her son, Roy Buchanan, then a minor, reserving a life interest in the property, the consideration for the deed being natural love and affection and an agreement by the minor son to support his mother. A few months thereafter the said Roy Buchanan and his mother joined in a deed to one W. F. Buchanan, the father and husband, respectively, of the grantors, for an express consideration of $5,000, no part of which Roy Buchanan received. This latter deed was also made during the minority of said Roy Buchanan.

While the said W. F. Buchanan was in possession of the property referred to, the receiver of the National Bank of Commerce of Tucumcari, N. M., one H. B. Jones, held a certain judgment against the said William F. Buchanan, upon which execution was duly issued, and the property described in the complaint was sold thereunder and bought in by the said receiver, who thereafter sold the property to the appellee, J. F. Ward, who, as plaintiff in the court below, instituted the suit against the several members of the Buchanan family, seeking to quiet his title.

The defendant who appeared, Roy Buchanan, made answer to the complaint, denying generally the allegations thereof and admitted that he asserts an interest in the real estate described in the complaint, and by way of cross-complaint, seeking to quiet his title to the property in question upon the ground that the deed executed by himself and his mother for the property referred to was executed during his minority on the 21st day of April, 1911; that on coming of age on the 19th day of December, 1913, he became the owner in fee simple of the land in controversy, and by his cross-complaint he disclaimed and disaffirmed the execution of the said deed, and claimed the entire property as his sole property. Relief is prayed that his title be held good and valid, and that the said J. F. Ward and H. B. Jones, receiver, be barred and estopped from claiming any right, title, interest, or estate of any kind or nature in and to the lands described and that his title be quieted and set at rest.

The receiver, H. B. Jones, and appellee, J. F. Ward, made answer to the cross-complaint of Roy Buchanan, and each set up the following facts: That the said Rebecca T. Buchanan was the owner in fee simple of the property described in the complaint; that at the time she executed the deed in favor of her son, Roy Buchanan, without consideration, it was not her intention to divest herself of the ownership of the said property, but that she continued to be the true owner thereof until she executed and delivered the deed to W. F. Buchanan; that her purpose in concealing the ownership of the said property by her conveyance to Buchanan was to avoid the payment of certain indebtedness to certain creditors and especially one J. A. Street; that the said Roy Buchanan had never had any interest in the property except as the holder of the record title thereof in trust for the said Rebecca T. Buchanan, and in pursuance of said trust and without any consideration to him, said Roy Buchanan joined in the deed to said W. F. Buchanan, who was a purchaser from the said Rebecca T. Buchanan. The issues were found in favor of plaintiff, from which judgment this appeal was prayed.

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.—While there are numerous assignments of error presented for our consideration, the one vital question in this case is whether there was a trust created by the deed from Rebecca T. Buchanan to her son, Roy Buchanan, who is appellant here and who seeks to disclaim and disaffirm his deed conveying said real estate to W. F. Buchanan, because the same was executed during his minority.

The right of a minor to disaffirm his deed after attaining his majority is not questioned by the appellee. His contention is that the conveyance in trust being valid as between the parties to the instrument, no rights of creditors having intervened, and the property which was subject to the trust having passed to an innocent purchaser through the exercise of a power of sale in the trustee, that all the title possessed by the trustee has passed

out of him; that the trust having been executed, it may now be proven by parol, and, by reason of the fact that Rebecca T. Buchanan joined in the deed with the trustee, her life estate was thereby divested, and the entire interest of both trustee and cestui que trust has merged in the appellee through the purchase from the receiver. It is contended by appellee that the trust is an express trust, and such was necessarily the case because, if one existed, it was by reason of an agreement between the parties, and clearly does not arise by implication of law.

[1] Express trusts are those which are created by the direct and positive acts of the parties, by some writing, or deed, or will, or by words, either expressly or impliedly evincing a desire to create a trust. 39 Cyc. 24; Mining Co. v. Hamilton, 14 N. M. 271, 91 Pac. 718. The existence of the trust, it is contended by appellee, is shown by a number of circumstances. First, by alleged admissions or statements of the said Rebecca T. Buchanan, which will be more fully referred to hereafter; her retention of control and possession in contradiction of her avowed purpose in making the deed; the contradiction by her testimony, as a witness, of the terms of the deed; and her final sale of the property to W. F. Buchanan for a consideration of $5,000, no part of which was received by Roy Buchanan; other minor facts, such as that she caused the deed to be recorded, and her reservation of a life estate in the property conveyed, are likewise relied upon as circumstances evidencing the existence of the alleged trust.

Appellant's assignments of error are to be grouped under several propositions, but we conclude that the one vital question being whether or not a trust has been proven, the assignments of error which pertain thereto are the only ones which are necessary for consideration.

[2] In this connection it is first contended by appellant that there is no evidence that the said conveyance from Rebecca T. Buchanan to Roy Buchanan constituted, or was intended to constitute, a trust in favor of said Rebecca T. Buchanan, or of any other person. It is next contended that there is no evidence to sustain the find-

ings of fact by the court to the effect that such a trust was proven. So far as the record discloses, the evidence of the existence of a trust rests upon the testimony of one Myron B. Keator, a notary public, who took the acknowledgments of the grantor, Rebecca T. Buchanan, and who testified concerning certain statements made to him by her at the time she executed the instrument. The witness testified that Mrs. Buchanan stated that she was making the deed for the homestead and several other pieces of her property to her son, because she was afraid that, inasmuch as she had signed notes with her son, Tom Buchanan, she might have to pay these obligations out of her property. This witness further testified that he had left the deed with Mrs. Buchanan, who further stated that Roy Buchanan had agreed to transfer the property back to her after the settlement of the Tom Buchanan notes on which she was surety, and that she did not mean the deed as an actual transfer of the property; that she was not dividing her property with the children, and that Roy Buchanan had no funds to purchase the property with.

Appellant objected to the testimony of this witness, upon the ground that the statements were privileged communications and were not binding upon appellant because not made in his presence, and as to the first objection introduced some evidence of a former employment of a partner of Mr. Keator, who was an attorney at law, and who had been consulted by Mrs. Buchanan as a client. From the present state of the record we do not believe this objection is well taken, for reasons not necessary to be stated further than to say that the relation of attorney and client was not clearly established, and the privilege, if existing, would be in favor of Mrs. Buchanan and probably could not be availed of under the circumstances of the case by Roy Buchanan.

It is not shown that the alleged statements or admissions of Mrs. Buchanan were made in the presence of the defendant Roy Buchanan, nor is there anything to indicate that he had any knowledge either of the statements or of the condition which the statements would tend to

indicate existed at the time. There is no contention that the defendant Roy Buchanan had any actual notice of the alleged fraudulent intent of the grantor, but, as we understand the position of appellee, it is argued that notice of the condition must be imputed to the grantee, Roy Buchanan, by reason of the circumstances which we have pointed out, and which, it is contended, he must have known.

A deed, absolute in form, is not to be set aside except upon the clearest proof. Nor can a trust be proven except upon proof of circumstances clearly evidencing such intention.

It is seriously contended by appellee that the conduct of Mrs. Buchanan and her son, Roy Buchanan, as well as her testimony, are wholly inconsistent with the theory that no trust was contemplated. This contention, it is argued, is supported by the fact that the consideration expressed in the deed was natural love and affection, and the agreement by Roy Buchanan to support the mother. We cannot agree with this argument because the consideration referred to is a good and valuable consideration and would support the instrument in the absence of fraud. It is further contended that by her testimony she contradicted her expressed purpose in the deed, by stating that one of her purposes in making the conveyance was her belief that her son was better able to manage the property than herself. Even though this be true, it is not a contradiction of the terms of her deed, and in itself is not sufficient to cast a suspicion thereupon.

The alleged inconsistency of her statement as to his better qualifications for management of the property and her reservation of a life estate is next cited by appellee as a circumstance tending to support the alleged trust, and again we see. no inconsistency here, as she might properly possess the life estate and yet elect to turn over the management of her property to her son. We are not aware that retention of possession of property in the face of an absolute conveyance is some evidence of a fraudulent intention. But in this case it is not inconsistent with her interest reserved by the deed which was a life

interest, or life estate. The collection of rents by Mrs. Buchanan is further cited as an evidence supporting the contention of appellee, but again this is not inconsistent with her reserved estate. The fact that she joined in the deed to W. F. Buchanan and immediately thereafter left for California, and that she received the consideration expressed in said deed, are further facts cited tending to show that she was the real party in interest, but again these facts are not inconsistent, but rather are in harmony, with the terms of the deed reserving to her a life estate in the property, there being nothing disclosed by the record which would indicate that the life estate conveyed by her was not worth the expressed consideration in the deed.

We have been unable to find any case involving facts similar to those now under consideration in the case at bar. The necessity to prove the existence of the trust, however, in order to defeat appellant's right to rescind his deed executed during minority, which trust depends upon the alleged intent of the grantor to conceal her property in order to hinder, delay, or defraud her creditors, makes this case analogous to the numerous reported cases where a conveyance for such purpose is sought to be set aside by creditors on the ground of fraud. And while such is not the purpose here, still, it is contended, that if the purpose was to defraud creditors, even though no creditors were actually defrauded, such purpose would negative a bona fide purchase or sale of the property and create a trust which the plaintiff below, or appellee here, can avail himself of, if capable of proving, and which if existent will clearly preclude the attempt of appellant to rescind his deed executed while a minor.

In an early case (Foster v. Hall, 12 Pick. [Mass.] 89, 22 Am. Dec. 400), it was held that in an inquiry into the validity of a conveyance alleged by the creditors of the grantor to be fraudulent, they may give in evidence the acts or declarations of the grantor, prior to the conveyance, tending to show that he had a fraudulent intent, without being required to prove a knowledge on the part of the grantee, of the particular acts or declarations from which such an intent of the grantor was to be in-

ferred; the conveyance, however, not to be defeated unless it was also proved that the grantee had knowledge of the fraudulent intent, which knowledge on the part of the grantee may be proved by any circumstance tending to show a knowledge of the designs of the grantor. In other words, it was decided that a fraudulent intent of the grantor and a knowledge thereof or participation therein by the grantee are both to be proved. This rule is not only a salutary one, but a necessary one, unless deeds absolute in form are to be lightly set aside and thereby property rights seriously unsettled, if not destroyed.

It was also said, in another early case (Bridge v. Eggleston, 14 Mass. 245, 7 Am. Dec. 209) :

"To prove fraud in the grantor, his conduct and his declarations before the conveyance may be the best, and often the only, evidence within the power of the creditor. * * * If fraud is thus proven upon him, then the knowledge of it on the part of the grantee is to be proved, which may be done by showing a trifling consideration, or none at all: by acts inconsistent with the bona fide ownership of the property; by confessions of the nature of his bargain; or by other circumstances tending to show a knowledge of the designs of the grantor."

It has also been said, and is doubtless the rule, that where the grantee has had notice of facts calculated to put a reasonable and ordinarily prudent man upon inquiry, which, if followed, would lead to a discovery of the fraudulent intent of the grantor, it is sufficient to charge him with notice of the fraud. See Moore on Fraudulent Conveyances, vol. 2, p. 578; Kansas Moline Plow Co. v. Sherman, 3 Okl. 204, 41 Pac. 623, 32 L. R. A. 33.

Tested by the foregoing rules, we conclude that there is no evidence disclosed by the record in this case tending to show that a knowledge of the alleged fraudulent intent of the grantor was had by the grantee, and in fact there is nothing that indicates that the grantee was acting in any way inconsistent with his character as the grantee in an absolute deed of conveyance. The record is devoid of all evidence, as we read it, which would tend to charge

the grantee with responsibility as a trustee under an express trust, and because of this failure to bring home to the grantee a knowledge of the alleged conditions, the cause must be reversed and remanded, with instructions to quiet title of appellant in the fee. And it is so ordered.

ROBERTS, C.J., and PARKER, J., concur.

[No. 1875, July 18, 1916.]
[Rehearing Denied December 13, 1916.]
## STATE v. RUCKER.